Case number 17-1266. Jeff Blau, Tax Matters Partner of RERI Holdings I, LLC Appellant v. Commissioner of Internal Revenue Service. Ms. Kathleen Hamm, RERI Appellant. Mr. Christensen, the appellate. Good morning. Good morning, Your Honors. My name is Kathleen Hamm and I represent the appellant in this matter, Jeff Blau, who is the Tax Matters Partner of RERI Holdings I, LLC. This is an appeal from the United States Tax Court's decision to disallow a $33 million charitable contribution deduction and a 40% gross valuation misstatement penalty. I have 15 minutes for my argument this morning and I have reserved 3 minutes for rebuttal of the Court's permission. The Court's decision should be reversed for three independent reasons. First, it was error for the Court to deny the entire charitable contribution deduction simply because there was a mistake made on an attachment to the tax return. Second, it was error for the Court to affirm the 40% gross valuation misstatement penalty. And last, it was error for the Court to conclude that the valuation tables under Section 7520 of the Internal Revenue Code should be set aside. I'd like to start this morning by talking about the appraisal summary. The Court concluded that the entire deduction should be disallowed because one of the lines on that form was left blank. An appraisal summary is a two-page document that taxpayers who are making a charitable contribution in excess of $5,000 are required to attach to their federal income tax return. And the form requires lots of different kinds of information intended to tell the IRS something about the property that's being donated. And RERI, in fact, completed the form and attached it to its tax return. And it went beyond the requirement to simply include a summary of the appraisal. It also included an entire appraisal as part of its tax return, even though it was not required to do so in the year 2003. Now, the important thing to understand is that the attached appraisal did not include the information, cost basis information that was also omitted from the form itself, correct? That's correct. The requirements for qualified appraisal do not require that basis be included in the qualified appraisal. The filing collectively, no matter how long or thorough the appraisal you attach, did not provide the information the IRS asked for. Well, the form does have a box on it that asks for basis information, and it's important to understand why is that on the form in the first place. Basis is an important consideration sometimes for purposes of determining the amount to which a taxpayer is entitled for its charitable contribution deduction. For example, where there's a donation of intellectual property, the taxpayer's donation is capped at its basis. Why is it irrelevant here? It's not relevant here, Your Honor, because basis is not important for determining whether or not Reary made a charitable contribution, and it's not important for purposes of determining how much Reary's charitable contribution is. Do you want to respond to the government's reference to the legislative history of the provision? Certainly. So the government talks about the legislative history for DEFRA, which was enacted in 1984 and instructed the IRS to promulgate regulations with respect to the information that taxpayers should report to the IRS as part of the charitable contribution regulatory scheme, and one of those things relates to basis. But the way that the government reconstructs the legislative history in their papers is simply not accurate. What's clear when you read the legislative history as a whole is that, yes, Congress was concerned about overvaluations, but that the information about basis is not related to that concern. They appear actually in separate places within the legislative history, so one has nothing to do with the other. The purpose was that Congress wanted taxpayers to provide certain information, but the courts have long recognized that the rules are complicated and taxpayers will from time to time make mistakes when they are reporting information to the Internal Revenue Service. But you would agree this little summary could tell you what at least the Senate committee was interested in. Is that correct? I'm sorry, Your Honor, I missed the first part of your question. This summary that you've been discussing, that could alert the commissioner to the need to look more closely at this very complicated, extensive form. Isn't that correct?  Your Honor, I don't agree with the underlying premise that the basis information would have alerted the Internal Revenue Service. Well, if I buy a piece of property for a dollar and I claim a $55 million charitable contribution, you know, that might tell the commissioner red flag. It might. But upon looking at it, might agree with you that basis is irrelevant here. But it is. Would you not agree what at least the quoted language from the Senate committee was interested in, regardless of where it appeared in the legislative history? Well, I think the concern with respect to basis has to do with different kinds of charitable contributions than the one that are at issue here. No, I mean the gaming of the system. Well, the gaming of the system, Your Honor, I don't think that that's what's happened here, because what you're referring to is the box on the return. I'm not suggesting one way or another that, but I'm trying to understand why you think this short form is basically, as you put it in your brief, not relevant. It's not so much that the form itself isn't relevant. It's that the particular box on this form with respect to this particular charitable contribution is not informative to the IRS. And let me go back to your prior question, Your Honor. Is it a red flag if you leave the box blank and you claim a charitable contribution deduction of $33 million? We've cited case law in our brief that describes the fact that when you leave a box on a return blank, that's the same as putting a zero in the box. So if the red flag to the IRS is the same. Well, that case involved when things you weren't claiming, deductions you weren't claiming. So leaving blank or zero signifies you're just not claiming something. Here you are claiming something, and something that requires exceptional levels of substantiation. Well, at most they're claiming that the basis is zero, and that provides the very same red flag that the court was referring to earlier. It's also important to recognize that the Internal Revenue Service did select this return for audit. It did conduct an examination. It did issue an FPA. It did file an answer. It did file an amendment to answer. And it did file a second amendment to answer. Well, where did we decide cases for, decide to make decisions that cover in the broad rule of cases, not just this particular one? You said something earlier about someone could just have a mistake. This was a very large donation done by very sophisticated entities with what I assume were sophisticated accountants and lawyers filling out the tax returns. And as you said, they went above and beyond by attaching the full appraisal. So is it your client's position that that box was left blank? Was it an oversight on a form that I expect was scrubbed pretty thoroughly by lawyers and accountants? Or was it deliberate? Or do we know? Have you made any showing on that? That's a good question, Your Honor. So this issue was not raised in the court below. The IRS never once during the audit, during the litigation, ever raised any concerns with respect to this form. So the agency itself that's charged with gathering this information and reviewing it never once, except in this appeal to try to affirm the decision of the tax court, has raised any issue or concern with respect to whether or not they were deprived of any information. The record is completely undeveloped on this point because it was not an issue that was raised in the court below. Can you tell us what your client's position is on how something this carefully, thoroughly vetted and overprepared? Are you able to tell us your client's position on whether it was accident or deliberate? I'm not, Your Honor. But we do know that what is in the record is that the return was professionally prepared by a large accounting firm. And it just never came up during the trial why the box wasn't filled in. The courts have long held that this standard to be applied in this situation is substantial compliance. And the requirement, I've already talked about why this would be substantial compliance, because all of the information that the IRS needed to evaluate the deduction was already provided to it. Excuse me, did you say that was the standard in court cases involving this form? Yes, it is, Your Honor. D-23? That's correct. There are at least three cases that reach that conclusion, including the Second Circuit and Shilman. Now, the other reason that we would say that this is not fatal to the deduction is that the regulations recognize specifically that there will be times when taxpayers either fail to include the form in its entirety or will fail to include information that's required to be included on the form. And that's Regulation Section 170A-13. Well, let me ask you about that. Yes, Your Honor. Was there any, after the tax court ruled, was there any further objection along these lines or any request of the Commissioner? With respect to the time to cure? The time to cure. Well, during the examination, the IRS was provided with information about what we repaid for the charitable contributions. So the answer to my question is no? The answer was they already had basis. That's why the answer is no. There was no opportunity to cure. And there was no request by the IRS to provide the missing information at any point in time or even any discussion about the form itself. But the regulation is clear that it is not only the failure to conclude the form in its entirety, it's also the requirement to complete a fully completed appraisal summary. The Court also erred when it concluded that the 40 percent gross valuation misstatement should apply. So I'm just trying to understand your argument. You're saying substantial compliance. Your client was denied the opportunity under the regulation to have the option of curing the omission. And your answer to me when I asked, well, is there any effort to make that point and argue it? You said, well, they already had the information. So you're not relying on the regulatory cure. You're relying on the title of the doctrine of substantial compliance. Well, I'm relying on two interrelated points. One is to the point of whether or not substantial compliance should be the standard. Is this requirement so important that we should set aside the longstanding substantial compliance doctrine? And my point is that the regulations themselves accept that there will be instances in which perfection is not the standard. I understand that. I'm just trying to understand how it applies in your client's case. Well, the way that the regulation applies is that because the IRS never requested the cure, they never said, wait, we're missing this basis information on your form 8283. You have 90 days to supply this information. Otherwise, we're going to deny your deduction. Your Honor, I see that my time is up. May I just finish my answer to the question? Yes, please do. That the point is that although they were not provided with the opportunity to cure, the IRS has effectively waived its objection to saying that this information should have been supplied. Can I ask you about the Gelbtok? Am I saying that name correctly? I believe so, Your Honor. Gelbtok appraisal. And he praised the remainder interest in property. And the government says there should have been a remainder interest in holdings. Does that distinction make a difference? If all holdings is holding the property, is one more marketable than the other? A remainder interest in just a piece of property versus a remainder interest in an entity that's holding a piece of property? So there are two related answers to your question, Your Honor. The first is that for purposes of the tax law, it's absolutely correct what Mr. Gelbtok did, which is that he disregarded the LLCs for purposes of doing the valuation. And the law is clear that under Regulatory Section 301.7701-3, that an LLC with a single owner is disregarded for all federal tax purposes. The government relies on a case decided six years later, the Pierre case, in which the tax court concluded that, well, maybe there are some times when a disregarded entity is not disregarded. But in 2003, the government's position was exactly the same as the argument I'm presenting to the court today, which is that the LLC is irrelevant to the determination of value because an LLC is not important for federal tax purposes. The other point to Your Honor's question, which is, well, does it matter? Are they effectively the same value? And the evidence that was presented in the court below was yes, that they would be the same value. And respondents experts did not submit any evidence on the point as to whether or not there was a difference between valuing the LLC and a difference between valuing the fee interest in the underlying property. So even if in some situations there could be, if the LLC had some other credit card problem or something like that, but that nothing like that, we don't need to go there because nothing like that was shown in this case? That's right. The one issue that the government raises is with respect to the mortgage on the property, but there are two reasons that the mortgage is not relevant to the determination here. One is that the mortgage would have been satisfied at the time that the possessory interest payment took place, and the other is that it would distort the value as the expert reports showed in this case. And then as to the question about the discount rate, do you agree that as to the tax court's determination of how, whether the, between different experts, whether a discount rate was mathematically computed in a proper manner, that that's a fact finding subject to clear error review? The actual mathematical computation is certainly subject to clear error review. The method that the court applied is subject to de novo review. The method the tax court applied in reviewing the expert? Well, the... Competing approaches? So, well, the experts... What do you mean by that? Yes, I'm over time here, Your Honor. It's okay, it's fine. The experts provided different methods to the court for purposes of determining what the fair market value was of the property. The court took primarily Dr. Craig's method. We talked about why that was not the correct method for the court to use for purposes of valuing a property of this type. The selection of that method is subject to clear error review. The particular facts relied on... I'm sorry, the choice of the method is subject to de novo review. The particular facts... What do you mean by the choice of the method? Whether they could... Your position is that whether they liked Dr. Craig's method versus one of the other experts' methods, whether they thought one was equally reliable or one was better than the other, that's a legal question? No, no, no. I'm sorry, Your Honor. So the particular method that the court uses, discounted cash flow, income method, that is a legal choice by the court as to who... And they did that here. And they did the discounted capital method. But it was also a choice of method to reject the tables under Section 7520, and that's subject to de novo review, Your Honor. Thank you. Good morning. Good morning. You may have pleased the court, Jacob Christensen, for the Commissioner of Internal Revenue. Mary acquired the property in issue for $3 million, 17 months later donated it to the University of Michigan and claimed a charitable contribution deduction for $33 million for that donation. Mary's valuation was based on tables under Section 7520 that don't apply, and it ignored the outstanding debt of $42 million that encumbered the property as well as other restrictions on the university's use of the property that were not accounted for in that valuation. Is it common for the tax court to invoke a reason for denying here a deduction that was never advanced by the IRS at the first level or the commissioner before the court and was never raised in any way to give the party advance notice? I don't know how common that is, but I will say that the Internal Revenue Code, Section 6214, authorizes and provides jurisdiction to the tax court to determine the correct amount of the tax, even if the correct amount is greater than the amount determined by the commissioner in a notice of deficiency. But do they have to give the parties notice that they're considering an entirely different argument that would have different financial effect? Because this argument about substantiation eliminated the entire deduction, whereas the prior one about this valuation would have only eliminated the differential between what the IRS thought was the right valuation and what they claimed. So it's both a whole new theory and a whole new consequence. So I agree that notice issues could arise. In this case, where we could have sought reconsideration after the tax court issued its opinion but did not do that. Also, in this case... Is there a burden on the taxpayer to seek reconsideration or is there some burden on the tax court to give advance notice? In this case, I don't think there was a burden on the tax court to provide that notice. And the court was within its jurisdiction to consider this issue, to determine the correct amount, particularly because the arguments made by the parties don't require any further factual development. So there was no prejudice to Rary in the tax court deciding this issue. The relevant evidence was Rary's tax return, the appraisal summary that had already been submitted with the return. And the regulations... made a substantial compliance argument to the tax court. And they weren't given it. So I get that the form is the form and it's blank. But now we're supposed to sort out substantial compliance, whether it applies or not, whether it was met here or not in the first instance without any of those determinations having been made by the tax court, which I would have thought would be your preferred approach. Well, I would just say that the regulations that are applicable here, they require the taxpayer at the time it claims the deduction to provide a fully completed appraisal summary. And if they fail to do that, and they don't come within one of the exceptions under the regulation, then the deduction is not allowable for that reason. Or that just triggers the whole debate about whether you can have a substantial compliance, where substantial compliance can satisfy the failure to meet that provision, to make that disclosure. And if it can, substantial compliance is available. You have competing views on that, whether it was met here. And we're supposed to be a court of review, and we're having to be first view on those issues in this case. Right. Well, in this case, as you said, there is a dispute about whether the doctrine of substantial compliance should even apply, particularly where the secretary has already specifically provided instances where taxpayers can obtain relief from these provisions for not disclosing their cost basis. In the instance where the taxpayer is unable to do so for reasonable cost. The evidence in this case shows that Rary had sold the property only 17 months before, such that it's inescapable the inference that Rary knew what the cost basis was, but for some reason that's never been explained, didn't disclose it on the form. And so Rary wouldn't fall within that exception in the regulations that the secretary has provided, and we don't think it's appropriate, you know, to enlarge the exceptions that the secretary has already provided by regulation under the doctrine of substantial compliance. What about this case cited in the Second Circuit, the Schneiderman case? So the facts were much different in that case in the Second Circuit. In that case, there were two forms, 82, 83, the appraisal summary form that were submitted, and together they contained all the signatures and information necessary. And the court held that the fact that they weren't submitted in one single form was the most technical of deficiencies that could be overlooked in that circumstance. But here ---- In other words, it was substantial compliance. Yes. And it was form 82, 83. Yes. You didn't call that to our attention in your brief in arguing that for strict compliance. No. Well, that had been cited by Rary in the opening brief. And we agree with that, that the Sheldman did recognize the doctrine of substantial compliance in that case. And the tax court also has recognized the doctrine of substantial compliance. In this context, where the information that has not been disclosed is crucial information and important for the commissioner in allowing the commissioner to identify ---- But that's the very debate, right? So that's the very debate that we're ---- Right? They say it's not ---- it might be for some types of donations. But for this type of donation, you had the form, you had the full attached appraisal, which let you know that it was the type of donation for which cost basis isn't a cap on the donation. And given that you didn't need it to make the determination whether it ultimately did, that this contribution was going to be overstated in its amount, that you, as in the other case, had all the information you needed to make the decisions that you needed to make. I don't know why a blank isn't just as much of a flag that there's a problem here as if they put a dollar in the line. Your Honor, the taxpayer's argument is that cost basis is only relevant when it's relevant in computing the amount of the deduction. In fact, the provisions to which taxpayer prefers at Section 170, Paragraph E, A1, those provisions have been in existence in the tax code since the Tax Reform Act of 1969. And that is not what motivated Congress in 1984 to require or direct the Secretary to require taxpayers to disclose their cost basis. Congress was concerned with taxpayers claiming excessive deductions based on overvaluations of property. And so a specific concern was with appreciated property that taxpayers donate. And the only way the Commissioner can identify appreciated property, and all this is in the legislative history, is for the taxpayer to disclose its cost basis. That's the red flag argument. Right. But I guess what I'm asking you is why isn't leaving that blank, especially when it's fancy-schmancy accounting firms and lawyers that filled this thing out, isn't that just as much of a red flag? Well, it's also supposed to serve a goal of deterrence. The legislative history explains that this is supposed to prevent taxpayers from playing the audit lottery. And by requiring the taxpayer to disclose their cost basis right next to the amount of the claim deduction, the information that would or will alert the Commissioner. They think the IRS will see it was left blank and go, oh, must be okay, and move on? Well, when you compare. That doesn't make any sense. No, what I mean is when you compare the cost basis, in this case $3 million, had they disclosed it, but they didn't. So they disclosed zero. And when you compare that with the $33 million of the claim deduction, that raises a red flag. And it also deters the taxpayer from making the claim and playing the audit lottery, which was Congress' concern. I get that. I guess I'm trying to ask, as a practical matter, why, when it seems to have been deliberately left blank, is that not just as much of a red flag to the IRS? Is that your position? I don't think it is, because it would be more of a red flag to see that the deduction claimed is $33 million, and it was only acquired a year before the agreement. Then they left it out? Well, if they leave it. So if they leave it, by leaving the form blank, the argument that that means that Rary meant to portray that the cost basis was zero is a curious argument, because, in fact, Rary was aware that the cost basis was not zero and signed this form under penalty of perjury. And so that would be false information. No, it's just that it was left blank, left blank. And so you can assume zero if you want. That's their position. Yes. And, again, it doesn't seem to serve the same purpose with the requirement that, you know, forcing the taxpayer to disclose the cost basis next to the amount of the deduction that's being claimed. I mean, in this case, you know, the commissioner did eventually select Rary for audit, but the goal of Congress was to deter taxpayers from playing the audit lottery in the first instance. And that's why it imposed these substantiations. Just to be clear, your position is that the point of that box, at least as here in a case where cost basis is not relevant to the actual amount of the donation that's or contribution that's allowed, the deduction that's allowed, its sole but important function is to be a red flag to the IRS. But you don't need it once you decide you're going to look at this to compute whether they complied or not with the tax law. Well, I'd say the purpose is to deter the taxpayer from claiming an overvaluation in the first instance because by disclosing that information, the commissioner would be alerted that there was a potential overvaluation and it would trigger an audit. So that's the purpose of the disclosure requirement. And a blank form, a blank basis doesn't automatically trigger inquiry? I can't answer as a factual matter whether that's correct or not. It would be very peculiar. I think, you know, here the tax court made the finding that the significant disparity between the $3 million cost basis and the $33 million, had it been disclosed, would have alerted the commissioner. You know, I can't speak to what would happen in the event that, you know, I don't know how the IRS views that when it's left blank as a matter of fact. One question I had, and I don't know if you're familiar with the record or not, but your brief has that note that this is part of a larger scheme. Does that factor in here at all in the tax court's decision to focus on this unfilled box? I think what it shows is that there was some effort to manipulate the tables under Section 7520 in using those tables to obtain a grossly inflated value for a charitable contribution, you know, and then passing the same piece of property on to subsequent taxpayers who would do the same thing, relying on the same tables, and in fact on the same appraiser, Delta, to support their claims. I think that's where it becomes relevant in the fact that the tables were not meant to apply to this type of interest, where the interest is not adequately preserved and protected as it would be under the law of trusts. Now, as to that argument, the tax court argues that, incorrectly, that the commissioner's position is that unless the interest is held in trust, that it can't qualify under the tables.  Instead, it's only one aspect of the law of trusts that the regulation focuses on, which is the preservation and protection of the property consistent with that that would be provided by the law of trusts. In other words, there's no duty of loyalty that must accompany it as there would be under the law of trusts. It's just this one aspect of the law of trusts that is relevant. Well, I'm sure I understand that. With elimination of the two clauses that you focused on, one relating, I think, to non-recourse, and the other to restrictions on resale, if those had not been part of the transaction, there would be no objection? No, there still would be, because the reason that the property in interest here was not consistent, did not provide the SMI holder with the protection and preservation required, or that's consistent with the law of trusts, is that the SMI holder had no ability to sue for damages for waste committed against the property. Isn't that the non-recourse provision? Excuse me? That's the non-recourse provision, isn't it? Okay.  Yes.  So if that were out of the picture and the restraint on resale were out of the picture, you wouldn't actually have to have a trust. Right. Okay. Right, correct. And then there is the case law wherein the courts have held that the tables are inapplicable if the result is unrealistic and unreasonable. And that case law was not superseded by the regulations that were enacted here, which the Sixth Circuit held in the Negron case. The last thing, I see I am over time. No, I actually wanted to ask you about the gelt hook. You make a lot in your brief about appraising the wrong property. But did you present any evidence that there is a differential in value between the, I will call it, remainder interest in Holdings LLC versus remainder interest in the property? Yes. Actually, in our brief, we, first of all, Geltuck, who appraised the property, testified that he would have come up with a different number. That's in the appendix, page 316. And then he confirmed. If I don't read that testimony the same way as you, then tell me why, in the IRS's view, the value is different. It's the debt that's on the property that was ignored under the appraisal. And if you're valuing an LLC interest. That would apply whether they were evaluating the property interest itself or the Holdings interest, would it not? They both carried the debt. So that wasn't a difference between what he evaluated. It may have been error not to address that mortgage debt, period, one way or the other. But that doesn't turn on the difference between evaluating Holdings versus evaluating the property, correct? I can't answer that. I don't have the expertise to answer that. You can't be in a position that they could have, had he evaluated the remainder interest in the property, in evaluating the remainder interest in the property itself, he could ignore the mortgage debt. But he couldn't do that if he was evaluating the interest in Holdings? No, I think, I agree with Your Honor that the debt does impact both. Okay, so that's not a difference in the valuation. Yes, and the other evidence that we've cited is the expert report of Dr. Craig, where he explains that the ownership structure would make a difference to the value, both in terms of a different marketability and different levels of control that the LLC owner would have over the property, as opposed to a direct interest in the property. And that's in Dr. Craig's expert report that we've cited. Unless there are further questions, I see my time is up. Thank you. Counsel for opinion. Your Honor, just a few follow-up points. First, with respect to the question of substantial compliance in the appraisal summary, it's absolutely clear that the government had the burden on that issue, and they never raised it, and they never presented any evidence. The court's conclusion below that the IRS was somehow hampered is purely hypothetical. It wasn't based on any actual information about what happened. So explain to me what you mean by that. Substantial compliance is raised here as a defense, so doesn't your client have to raise it? Well, they would have raised it had it been— No, I'm just trying to understand your reliance on this regulatory scheme here. On the regulatory scheme relating to the cure period, Your Honor, the 90 days? Your argument here is there was substantial compliance. Well, the first point is that the government had the burden to raise this issue in the first place because it allowed a portion of the deduction in its FPA, and therefore it had conceded that we remit all of its substantiation requirements. I don't know why that necessarily follows. That's what I'm trying to be clear on here. Okay, so the reason that that necessarily follows is the government allows any portion of the charitable contribution deduction in its FPA, the Final Partnership Administrative Adjustment. That's the letter that goes to the partnership that says, this is what our finding is after the audit. They allowed a several million dollar deduction as part of that. So what is the—they did not disallow the deduction by saying, you're not entitled to anything because you didn't provide us with the information that you were required to have to substantiate your deduction. And that is why the government had the burden to raise it in the court below, and they had the burden to establish that there had not been compliance. So they couldn't—I'm sorry. No, that's okay. I'm trying to make sure I understand. So your argument is they couldn't have figured out what the right deduction is if they were missing substantiation information that was needed to substantially comply with this. Right. What happens at the conclusion of an IRS audit is that if the taxpayer has not substantiated their deduction, if they don't have receipts, if they don't have an appraisal, the whole deduction is disallowed. You don't get any part of the deduction if you fail to—that's the gating issue, which is can you even come in the door and talk to us about how much it is? Do you have the right documents? And by allowing a portion of the deduction, they conceded that and bore the burden with respect to all of these issues. And they just didn't bring this up as an issue in the court. They may have conceded that they thought it was substantiated, but that doesn't mean they conceded they had the burden of proof. Did you say they conceded they had the burden of proof? No, I'm not saying they conceded they had the burden of proof, but it's clear under the tax court rules that any new issue raised after the issuance of the FPA under Tax Court Rule 142 that the government has the burden of proof on that item. What about their argument that you could have sought reconsideration from the tax court and raised this whole issue, and I get it took everyone by surprise. But there's a process there. If you wanted to hash this out in front of them, you could have raised it there. I mean, there's no requirement that a taxpayer seek reconsideration. We took an appeal to this court because we disagree with that conclusion. The other thing that's important to note is that the parties stipulated, as part of the record in this case and as part of the appendix here, what the basis was. So there was no... Was that stipulation? I thought you stipulated that the prices paid were not the fair market value, but there was actually stipulation as to the basis? Did you just say there was a stipulation basis? Well, the price paid for the remainder interest is the same. That's the cost basis. In the remainder interest, they're the same thing, and there's a stipulation on that fact. I can find the reference and provide it to Robert. Okay. Thank you, Your Honors. We will take the case under advisement.
judges: Rogers, Millett, Ginsburg